ISMAIL J. RAMSEY (CABN 189820)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS  (CABN 305076)
Assistant United States Attorney

    1301 Clay Street
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    molly.priedeman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JARVIS TOUSSAINT,<br><br>    Defendant. | CASE NOS. 4:19-cr-00520 JSW<br><br>UNITED STATES' RESENTENCING MEMORANDUM<br><br>Hearing Date: April 16, 2024<br>Time:  1:00 p.m.<br>Judge: Hon. Jeffrey S. White |

## I.    INTRODUCTION

On May 27, 2021, the government filed a one-count superseding indictment charging the defendant Jarvis Toussaint with a violation of 18 U.S.C. 922(g)(1) - Felon in Possession of Firearm and Ammunition.  The United States Probation Office (USPO) filed a Form 12 on September 11, 2019, based on the same conduct.  Mr. Toussaint was alleged to have violated special condition number two of his supervised release that he shall abstain from the use of all alcoholic beverages (Count One) and the mandatory condition which states that Mr. Toussaint must not commit another federal, state, or local crime (Count Two).  On June 28, 2021, Toussaint pled guilty to Count One of the superseding indictment, admitted Count Two of the Form 12, and the government dismissed Count One of the Form 12.  On August 9, 2022, the Court sentenced Toussaint to a prison of 36 months followed by three years

UNITED STATES' RESENTENCING MEMORANDUM    1
4:19-cr-00520 JSW

of supervised release.  Case No. CR-19-00520, Dkt. 103.  For the supervised release violation, the Court imposed a consecutive sentence of 12 months imprisonment, with no term of supervised release to follow.  Case No. CR-12-00407, Dkt. 450.[1]

Mr. Toussaint appealed the sentence, and on August 18, 2023, the appellate court granted the government's Motion For Remand For Full Resentencing, reasoning, as both parties asserted, that the existing record was insufficiently developed to support the application of an enhanced base offense level under United States Sentencing Guidelines § 2K2.1(a)(4)(B) (whether the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine").  The court vacated the judgment and remanded for sentencing on an open record.  Case No. CR-19-00520, Dkt. 130.

For the reasons set forth below, the United States recommends a sentence of 36 months imprisonment to be followed by a three-year term of supervised release, forfeiture, and a $100 special assessment for Count One of the Indictment.

II.    **BACKGROUND**

A.    **Offense Conduct**

At approximately 3:48 a.m. on September 2, 2019, while Mr. Toussaint was on supervised release for a 2013 conviction for Conspiracy to Commit Robbery Affecting Interstate Commerce, California Highway Patrol officers arrested Mr. Toussaint after conducting a driving under the influence of alcohol investigation.  PSR ¶ 6.  After the arrest, officers conducted a search of the vehicle and recovered a Glock 22, .40 caliber firearm, bearing serial number XHS307, under the seat of the vehicle.  *Id.*  The firearm had a 15-round magazine containing 14 .40 caliber bullets in the magazine.  *Id.*

B.    **Sentencing Guidelines**

On January 17, 2024, the Probation Office issued the Sentencing Reduction Investigation Report/Resentencing Memorandum.  Dkt. 139.  Probation determined that Mr. Toussaint's advisory guidelines are 33-41 months, based on a total offense level of 18 and a criminal history category of III (a reduction from his criminal history category of IV at the time of his first sentencing, due to subsequent

---

[1] It is the government's understanding that the Court's imposition of a 12-month consecutive sentence for Mr. Toussaint's supervised release violation is not to be reconsidered in this resentencing.

UNITED STATES' RESENTENCING MEMORANDUM    2
4:19-cr-00520 JSW

amendments to United States Sentencing Guideline § 4A1.1(e)) .

The government agrees with the guidelines calculation but disagrees with Probation's factual basis for arriving at the total offense level. While the Sentencing Reduction Investigation Report/Resentencing Memorandum states that Mr. Toussaint possessed a Glock semiautomatic pistol and a 17-round magazine loaded with 17 cartridges, Mr. Toussaint's Glock pistol actually contained a 15-round magazine that was loaded with 14 cartridges. *See* PSR ¶ 6. Nonetheless, Mr. Toussaint was a prohibited person (given his prior felony conviction), and, as discussed below, the Glock pistol he possessed was a semiautomatic weapon capable of accepting a large capacity magazine, and so the government agrees that U.S.S.G. 2K2.1(a)(4)(B) applies, and the initial offense level of 20 is correct. (Which results in a total offense level of 18, given the reduction for acceptance of responsibility.)

### 1. The Glock Pistol Was A Semiautomatic Firearm Capable of Accepting a Large Capacity Magazine

On November 22, 2023, Special Agent Andrew Balady with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) inserted a magazine loaded with 17 rounds into the Glock pistol with serial number XHS307 that was recovered from Mr. Toussaint's vehicle at the time of his arrest. Exh. 1 at ¶ 6. Special Agent Balady then fired all 17 rounds in succession and found that the firearm operated as designed, extracting a fired cartridge and chambering a fresh cartridge with each pull of the trigger. *Id*. Consequently, Special Agent Balady concluded that the Glock pistol possessed by Mr. Toussaint was a semiautomatic firearm capable of accepting a large capacity magazine.

### 2. U.S.S.G. § 2K2.1(a)(4)(B) Is Unambiguous that the Semiautomatic Firearm Need Only Be Capable of Accepting a Large Capacity Magazine

United States Sentencing Guideline § 2K2.1(a)(4)(B) provides for an offense level of 20 if the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine, and the defendant was a prohibited person at the time the defendant committed the instant offense. U.S.S.G. § 2K2.1(a)(4)(B). Application Note 2 to § 2K2.1 considerably narrows the guideline, however, providing in relevant part:

> a "semiautomatic firearm that is capable of accepting a large capacity magazine means a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to

UNITED STATES' RESENTENCING MEMORANDUM          3
4:19-cr-00520 JSW

the firearm.

U.S.S.G. § 2K2.1 app. n.2.

In *United States v. Castillo*, 69 F.4th 648, 655 (9th Cir. 2023), the Ninth Circuit held that the deference standard articulated in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) (which specifically considered deference to administrative agencies' interpretation of agency regulations) applies to the Unites States Sentencing Guidelines' commentary.  In *Kisor*, the Supreme Court held that a court should not defer to agency interpretation unless the regulation it seeks to interpret is "genuinely ambiguous. And when we use that term, we mean it—genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Id*. at 2414.  Applying this holding, the *Castillo* court stated that, absent ambiguity in the guideline, the court must "disregard the interpretive gloss set forth in the guideline's commentary." *Castillo*, 69 F.4th at 650.  A note cannot narrow the reach of a guideline.  *United States v. Lambert*, 498 F.3d 963, 971 (9th Cir. 2007).

Here, the relevant guideline is in no way ambiguous—it applies if the offense involved a "semiautomatic firearm that is *capable of accepting* a large capacity magazine."  U.S.S.G. § 2K2.1(a)(4)(B) (emphasis added).  The guideline does not invite the sort of restriction imposed by Application Note 2, which permits application of the guideline only if a magazine (or similar device) that accepts more than 15 rounds of ammunition is inserted into or nearby the firearm.  U.S.S.G. § 2K2.1 app. n.2.  While the guideline unambiguously concerns only the capability of the firearm to accept a large capacity magazine, the application note instead focuses on the defendant's ability to promptly use one.

Because there is no ambiguity in the guideline as to whether the large capacity magazine must be inserted into or nearby the firearm, the restrictive definition of Application Note 2 must be rejected. U.S.S.G. § 2K2.1(a)(4)(B) applies to Mr. Toussaint's Glock pistol.

III.    **DISCUSSION**

A.    **Applicable Law**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate

sentence by calculating the correct sentencing range under the Guidelines. *Id*. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5)    the need to provide restitution to any victims of the offense.

## B.    Recommended Sentence

As detailed in the PSR, Mr. Toussaint's current firearm offense is not an isolated incident. Rather, Mr. Toussaint's conduct in this case is consistent with a pattern of criminal conduct and demonstrated proclivity for possessing firearms. As laid out in the PSR, Mr. Toussaint has accrued numerous convictions, several of which relate to the possession of firearms or other weapons. PSR ¶¶ 29, 32, 33, 34, 36. Most significantly, Mr. Toussaint's current offense came less than a *year* after the commencement of his supervised release, following a significant custodial sentence.

Mr. Toussaint's reoccurring possession of a firearm is concerning on its own, but it is even more troubling when considered in conjunction with the facts underlying Mr. Toussaint's prior federal offense involving firearms. As detailed in the PSR, in 2012, Mr. Toussaint sold several firearms to undercover agents and agreed to commit a drug stash house robbery, with firearms. PSR ¶ 36. Mr. Toussaint and his co-conspirator affirmed their willingness to commit the robbery and stated that they would bring several firearms, including a machinegun. *Id.* Mr. Toussaint's prior conduct and conviction demonstrate a willingness and proclivity for using firearms to commit violence. *Id.* Viewed in light of

UNITED STATES' RESENTENCING MEMORANDUM        5
4:19-cr-00520 JSW

Mr. Toussaint's prior conviction, his most recent possession of a firearm is deeply concerning.

The government recognizes that there are mitigating circumstances that warrant consideration by the Court including the death of several individuals close to Mr. Toussaint, including his father in May 2021 and his aunt in June 2021.

The facts of this case, underscored by Mr. Toussaint's criminal history, and repeated possession of a firearm despite his felon status, and the need for general and specific deterrence, taking into account Mr. Toussaint's mitigating circumstances, warrant a sentence of 36 months imprisonment, to be followed by a three-year term of supervised release, forfeiture, and a $100 special assessment for Count One of the Superseding Indictment.

## IV.   CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully recommends a sentence of 36 months imprisonment to be followed by a three-year term of supervised release, forfeiture, and a $100 special assessment for Count One of the Superseding Indictment.

DATED:  April 9, 2024                              Respectfully submitted,

                                                    ISMAIL J. RAMSEY
                                                    United States Attorney


                                                    /s/ Jonah P. Ross
                                                    JONAH P. ROSS
                                                    Assistant United States Attorney

# EXHIBIT 1

ISMAIL J. RAMSEY (CABN 189820)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS  (CABN 305076)
Assistant United States Attorney

    1301 Clay Street
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    molly.priedeman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) | **CASE NOS. 4:19-cr-00520 JSW** |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | DECLARATION OF ATF SPECIAL AGENT ANDREW BALADY IN SUPPORT OF UNITED STATES' RE-SENTENCING MEMORANDUM |
| JARVIS TOUSSAINT, | ) | |
| Defendant. | ) | |

I, Andrew Balady, declare the following:

1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been so employed since July 2017.  As a Special Agent with ATF, one of my responsibilities is conducting criminal investigations concerning alleged violations of the Federal firearms laws.  I have acquired knowledge and experience as to firearms and ammunition from investigations, research, records, familiarity, conferring with other experts, training, teaching, and certifications.  I prepare reports and official correspondence relating to the identification, origin, and classification of firearms and ammunition under the provisions of the Federal firearms laws.

2.    Prior to joining ATF, I held internships with various local, state, and federal law enforcement agencies, including the U.S. Department of Homeland Security, Immigration and Customs Enforcement,

DECL. I/S/O UNITED STATES' RESENTENCING MEMORANDUM
4:19-cr-00520 JSW                                       1

and Office of Homeland Security Investigations. I was employed as a firearms instructor and general employee of Mass Firearms School (a firearms range and Federal Firearms Licensee) from 2012 to 2013. I handled, operated, maintained, and trained dozens of civilians on a multitude of different firearms.

3. I was employed with the City of Belmont, California Police Department as a Police Officer from 2013 to 2017. During that time, I held the positions of patrol officer and evidence technician. I conducted numerous investigations involving firearms and ammunition.

4. For over 20 years, I have had a personal interest in the history, collection, nomenclature, and sporting and professional use of firearms and ammunition. I have also accumulated a personal reference library of firearms- and ammunition-related publications, including but not limited to *The American Rifleman, Gun Digest, Guns and Ammo, Blue Book of Gun Values, The Tactical Journal,* and *Ammo Encyclopedia*, in order to remain familiar with firearms and firearm trends.

5. I am a recreational competitive shooter in the International Defensive Pistol Association and United States Practical Shooting Association.

6. On November 22, 2023, I conducted a live test-fire of a Glock Model 22 .40 S&W pistol bearing serial number XHS307. I used a Glock-manufactured .40 S&W 17-round magazine, and loaded the magazine with 17 .40 S&W cartridges. I then inserted the magazine into the Glock Model 22 .40 S&W pistol bearing serial number XHS307 and fired all 17 cartridges in succession. The firearms operated as designed, with the slide locking to the rearward position after the last round was fired.

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Oakland, California, on April 9, 2024.

*Andrew Balady*
_____
ANDREW BALADY
ATF Special Agent

DECL. I/S/O UNITED STATES' RESENTENCING MEMORANDUM
4:19-cr-00520 JSW                                                    2